UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELINDA N.,

                Plaintiff,

v.                                                      CASE NO. 1:24-cv-00559
                                                     (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 9, 14). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 9) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **DENIED**, and the decision of the Commissioner is **REMANDED**.

## I.    RELEVANT BACKGROUND

### A. Procedural Background

On May 5, 2021, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of December 1, 2020. (Tr. 83, 221-27.)  Plaintiff's claim was denied initially and on reconsideration.  (Tr. 81,

119.)  She then timely requested a hearing before an Administrative Law Judge (ALJ). (Tr.138-39.)  Plaintiff appeared with counsel for a hearing before ALJ Eric Eklund on June 23, 2023.  (Tr. 35-67.)  On August 2, 2023, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 14-34.)  The Appeals Council denied her request for review, (Tr. 1-6), and Plaintiff timely filed her appeal to this Court.

### B.     Factual Background[1]

Plaintiff was born on August 28, 1968 and alleged disability beginning on December 1, 2020.  (Tr. 82.)  Plaintiff graduated from high school and obtained a college degree in psychology.  (Tr. 40.)  At the time of the hearing, Plaintiff lived with her husband and three-year-old great niece.  (Tr. 39.)  Her disabling conditions were described to include neurogenic bladder/bowel; diabetes mellitus; chemotherapy induced peripheral neuropathy; mitochondrial cytopathy; major depression; radiation enteritis; chronic gastrointestinal pain, diarrhea; loss of bowel control; stoma with colostomy bag; and chronic vascular insufficiency of intestine.  (Tr. 83.)   Her significant impairments evolved from treatment she received for cervical cancer. While she was able to "beat" the cervical cancer, the treatment caused significant effects to her bowel, resulting in a loss of a substantial amount of her colon and a permanent colostomy bag.

Plaintiff testified that her most significant physical impairment was her bowel, specifically uncontrollable stool and stool leakage. (Tr. 44.)  In the summer of 2020, she underwent a colostomy which will be permanent.  (*Id.*)  Plaintiff described that the colostomy bag has impeded her ability to sleep through the night. (Tr. 45.)  She must wake up every two and a half or three hours to empty it; otherwise, it ruptures. (*Id.*)

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

Plaintiff explained that, because of this, she is chronically exhausted.  (*Id.*)  She noted that her bag seems to fill more often than other people experience, and can empty unexpectedly, and that it smells, which is embarrassing and increases her depression. (*Id.*)  Plaintiff indicated that she must clean it—some days, almost hourly—which takes ten to fifteen minutes, as she needs to take precautions to avoid smell.  (*Id.*)  Plaintiff explained that she had "two full arm lengths" of her colon removed, resulting in food and liquid going through her quickly. (*Id.*)  She described that they have tried many different things to avoid the unpleasantness of the colostomy bag, but none have been successful. (*Id.*)  She indicated there is no medication to help, nor are there larger bags.  (*Id.*)

In response to the ALJ's specific question as to how many times from 8:00am to 4:00pm Plaintiff would have to empty the bag, Plaintiff testified that she may have to empty or vent the colostomy bag every hour to hour and a half, but in either circumstance, the bag must be cleaned. (Tr. 46.)  The ALJ noted that the identified frequency was not reflected anywhere in her medical records and noted he found "that hard to believe." (*Id.*) Plaintiff noted sometimes she just had to vent it, but that still required that it be cleaned. She further noted that sometimes she may only have to empty it three times during the day and that the "unexpectancy" was very problematic.  (*Id.*)

Plaintiff testified as to issues with her bladder, which has ruptured on its own. (Tr. 50.)  She noted that, within the last two years, she has been hospitalized or had to visit the emergency room at least twice.  (*Id.*)  The longest amount of time she had been hospitalized with her bladder issue was five days.  (*Id.*)

Plaintiff identified the nerve damage pain in her back and legs as her next most significant physical issue. (Tr. 47.)  She explained that this damage was a result of cancer

treatment for her cervical cancer and indicated that the chronic pain continued to get worse. (Tr. 47-48.)  She also described pain in her wrist and arm which resulted from a car accident. (Tr. 48.)  She indicated that she took Tylenol and Advil for the pain, but it was slowly getting worse. (Tr. 49.)  She also noted that she continued to have tingling in her fingers, approximately once a week, which can sometimes resolve quickly or otherwise within a couple of hours after taking medication.  (*Id.*)

Plaintiff also testified as to her mental impairments.  (Tr. 50-51.)  She indicated that she sees a counselor weekly for treatment of her major depression, anxiety, and panic attacks.  (Tr. 51.)  Plaintiff explained that she had depression before she stopped working, but that it has gotten worse due to familial issues as well as fear of going out socially due to accidents that have occurred when she is not near a bathroom. (Tr. 51-52.)  She also elaborated that her inability to get enough sleep also contributes to her mental struggles. (Tr. 52.)  She indicated that she takes medication for these impairments and explained that she struggles just to get out of bed, and so getting to work would be difficult. (*Id.*)  She also explained that if something were to happen pertaining to her bowels or pain in her bladder, it would send her into a panic attack. (*Id.*)  She noted that the anxiety was overwhelming.  (*Id.*)

Plaintiff also described her symptoms relating to diabetes, noting that she tested her blood sugar levels a minimum of four times a day, usually more. (Tr. 57.)

While the ALJ was examining the vocational expert (VE), he inquired about off-task time, asking: "Assume a hypothetical individual was off task—if I add [the following limitation] to hypotheticals 1 and 2, that this individual would be consistently off task 5%

4

of any given workday, what effect would that have on the ability to obtain and maintain

employment?"  (Tr. 65.)  The VE responded:

> Based on my experience, employers will tolerate 5% off task a day for an
> unskilled job. They usually tolerate up to 10% off task. Anything more than
> that, all work is eliminated in the national economy. So according to your
> hypothetical, she could—the individual could maintain work in competitive
> employment. And that's based on my background and experience because
> the DOT does not detail that area.

(*Id.*)

The ALJ followed up: "[s]o if an individual were to be off task 11%, or beyond 11%,

in an eight-hour day, that would eliminate the ability to obtain and maintain employment?"

(*Id.*)  The VE responded "[y]es, it would. Based on my background and experience."  (*Id.*)

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and

conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.  (Tr. 19.)

2. The claimant has not engaged in substantial gainful activity since December 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*). (Tr. 19.)

3. The claimant has the following severe impairments: neurogenic bladder/bowel, peripheral neuropathy in fingers, stoma with colostomy bag, and history of dizziness/Meniere's disease (20 CFR 404.1520(c)). (Tr. 19.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 21.)

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently balance and climb ramps and stairs; less than occasionally stoop and crouch, and never climb ladders, ropes, or scaffolds, crawl, or kneel. She can frequently handle with the right upper extremity and frequently finger and performing fine manipulation

bilaterally. She can tolerate no exposure to moving machinery or unprotected heights. The claimant must be able to be off task up to 10% of any given workday due to the need to check blood sugars and service her colostomy bag. (Tr. 21.)

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). (Tr. 27.)

7. The claimant was born on August 28, 1968, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563). (Tr. 27.)

8. The claimant has at least a high school education (20 CFR 404.1564). (Tr. 27.)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 27.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). (Tr. 27.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2020, through the date of this decision (20 CFR 404.1520(g)). (Tr. 28.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence

from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.    Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner

considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence for two primary reasons.  Plaintiff's primary contention is that the ALJ did not base the 10% off-task limitation on any evidence in the record and there is no explanation as to how the ALJ arrived at the 10% figure.  (Doc. 9-1 at 21.)  Plaintiff contends that the VE testified that employers would tolerate 10% off task time, but not 11%, and so the ALJ's decision to implement 10% without any explanation is not harmless error.  (*See id.* at 25.)  Second, Plaintiff argues that the ALJ erred when he failed to meaningfully address Plaintiff's need for breaks to use the restroom, including the amount of time they would be expected to take her, in formulating her RFC, specifically the off-task component.  (*See id.* at 26.)

Having carefully considered the record and the pertinent law, the Court finds that remand is appropriate based on Plaintiff's first argument. Accordingly, the Court will not reach the merits of Plaintiff's other argument.

A claimant's RFC is the most she can still do despite her limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not

a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  "An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence*."  Rebecca B. v. Comm'r of Soc. Sec.*, 22-cv-00631-HKS, 2025 WL 90625, at *4 (W.D.N.Y. Jan. 14, 2025) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).

Accordingly, "an RFC determination is not necessarily flawed simply because it contains highly specific limitations that are not formulated directly from a medical opinion." *Danielle L. v. Comm'r of Soc. Sec.*, No. 1:23-cv-809-EAW, 2025 WL 879974, at *3 (W.D.N.Y. Mar. 21, 2025) (citing *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-cv-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021)); *see also Barry J. v. Comm'r of Soc. Sec.*, 725 F. Supp. 3d 312, 323 (W.D.N.Y. 2024) ("Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions.").

9

However, an ALJ must adequately demonstrate how the off-task limitation was formulated.  *See Martia P. v. Comm'r of Soc. Sec.*, 1:20-cv-560-DB, 2021 WL 2349397, at *4 (W.D.N.Y. June 9, 2021) (remanding when the ALJ did not discuss how he arrived at the 5% off-task limitation that he assigned).  Courts generally recognize that "[w]ithout 'some explanation' from the ALJ 'as to the tether between [the] RFC and the non-stale medical opinions or statements from [the claimant], the RFC [is] based upon [the ALJ's] lay analysis of [the claimant's] limitations, which is not permitted and requires remand.'" *See id.* (quoting *Jordan v. Berryhill*, 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2013)).  *See also Matthew P. v. Comm'r of Soc. Sec.*, 20-cv-1047, 2021 WL 2946411, at *2 (W.D.N.Y. July 14, 2021) (noting that "[w]hile the ALJ pointed to records indicating that Plaintiff had normal attention and normal memory, the ALJ does not tie the precise percentage of off-task time to any medical evidence."); *Jacqueline R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-97-EAW, 2023 WL 4360557, at *5 (W.D.N.Y. July 6, 2023) (remanding, noting that the ALJ "did not undertake any attempt to link the evidence of Plaintiff's symptoms into Plaintiff's specific off-task finding").  However, even if the ALJ's analysis may be technically insufficient, remand is not required when "portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."  *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1474 (WBC), 2022 WL 2718510, at *5 (W.D.N.Y. July 13, 2022) (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

Here, the ALJ provided no explanation for his off-task finding other than to note that the off-task time was required for Plaintiff to "check blood sugars and service her

colostomy bag." (Tr. 21.)  The ALJ does not identify how he concluded that up to 10% of each workday (or a total of forty-eight minutes) was the appropriate limitation.

None of the experts opined to a specific off-task time.   Consultative expert Dr. Fkiaras offered the following opinion:

> Marked schedule disruptions. Marked limitation driving and operating machinery. Marked limitation for activities which require exposure to unprotected heights. Moderate to marked limitation standing extended periods. Marked limitation for any repetitive heavy lifting, carrying, pushing, and pulling. Marked limitation for activities which require great exertion. The claimant is restricted from activities which require repetitive bending and squatting.

(Tr. 1084.)

Consultative expert Dr. Liu's opinion also addressed Plaintiff's colostomy bag:

> In my opinion, the claimant has moderate limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, prolonged sitting, and standing. The claimant's cervical cancer is in remission. The claimant's Foley placement and colostomy bag placement may add limitation for routine social or exercise activities. The claimant should avoid heights and heavy machinery operation due to the dizziness condition.

(Tr. 1155.)

Plaintiff's medical records reflect that she reported having to empty her colostomy bag every 2.0 hours or 2.5 hours. (*See* Tr. 562) (reflecting "Emptying frequency per day: Sets alarm for every 2 hours to avoid leaks"); (Tr. 753) ("She is emptying her colostomy every 2.5 hours and will occasionally have leaks, last episode was about 2 weeks ago"); (Tr. 558) ("[Plaintiff] states she has to empty her pouch every 2 hours at night causing her not to be able to sleep. At times she notices some stool leakage.")  At least once, this representation was made as how often she had to wake up during the night to empty it. (*See* Tr. 558) (2 hours); (*see also* Tr. 45) (testifying she woke up every 2.5-3.0 hours

11

during the night to empty her bag).  She testified that, from 8:00am-4:00pm, she had to empty her colostomy bag every 1.0-1.5 hours.  (*See* Tr. 45-46.)  Additionally, she testified she had to clean the bag each time she emptied or vented it, which would take between 10-15 minutes.  (*See* Tr. 45.)

It is clear to this Court that the ALJ did not find Plaintiff entirely credible, as he stated in this decision.  (*See* Tr. 26) ("The record does not support the severity of limitations alleged"). The ALJ's determination of subjective complaints is entirely permissible. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (noting that an ALJ is "not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.").  And it appears, then, from simple math, that he did not credit Plaintiff's testimony that she had to empty and clean her bag every 1.0-1.5 hours, because that would equal more than 10% of required off-task time.

However, Plaintiff testified to several different intervals in which she needed to empty, or at a minimum vent, her colostomy bag.  (*See* Tr. 45, 46, 558, 562, 753) (testifying she emptied her colostomy bag 1-1.5 hours, 2-2.5 hours, 3 hours).  Further, Plaintiff testified that it would take her ten to fifteen minutes to clean the bag each time she emptied or vented the bag.  (*See* Tr. 45.)  But the ALJ did not identify which portion of Plaintiff's testimony he found to be credible, and thus this Court is precluded from meaningfully reviewing whether his off-task limitation is supported by substantial evidence.

For example, if the ALJ accepted that Plaintiff had to clean the bag every two hours, that would mean that she cleaned it four times during an eight-hour period.  If the

12

ALJ accepted her testimony that it would take ten minutes to clean, she would need forty minutes in an eight-hour day to address her colostomy bag. This would equate to 8.33% of the workday.   But if the ALJ accepted Plaintiff's testimony that it would take fifteen minutes to clean, she would need sixty minutes of her day, which is 12.5% of the workday. Per the vocational expert's testimony, this combination of facts would render Plaintiff unemployable.   (Tr. 65.)   The same exercise of applying different time intervals for emptying or venting the bag and necessary cleaning time results in several other percentages of off-task time, ranging from 6.25% to 9.3%.   While several percentages seem to support the ALJ's RFC, as they fall under the 10% maximum, the Court notes that the ALJ also tied the off-task time to Plaintiff's need to check her blood sugar.  (*See* Tr. 21.)   But the ALJ does not identify in his decision how much time he attributes to this task, which must then be tied to the servicing of the colostomy bag, and renders the Court's review of his off-task time conclusion impossible.

The Court acknowledges Defendant's position that an ALJ has the right to resolve conflicting evidence and a disagreement with how the evidence is weighed is not sufficient for remand. (Doc. 14-1 at 9.)  However, the fact remains that the Court must meaningfully review the ALJ's decision, and to do so, must be able to identify how the decision was rendered.  *See Jacqueline R.*, 2023 WL 4360557, at *5; *Matthew P.*, 2021 WL 2946411, at *2; *Martia P.*, 2021 WL 2349397, at *4. Given the conflicting evidence in this case, the Court is wholly unable to discharge this obligation, and therefore, the matter must be remanded.

## IV.    CONCLUSION

For the above reasons, remand is warranted.

**ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** for further proceedings, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: March 16, 2026          J. Gregory Wehrman
Rochester, New York            HON. J. Gregory Wehrman
                               United States Magistrate Judge

14